**EXHIBIT 1**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| URB, INC. | ) | |
|         Plaintiff, | ) | |
|     v. | ) | Civil Action No. 08 C 582 |
| | ) | |
| STARTREHAB, INC., ROBERT | ) | |
| BINGHAM and GREGORY BINGHAM, | ) | Judge Joan B. Gottschall |
| Individually, | ) | |
|         Defendants. | ) | Magistrate Judge Geraldine Soat Brown |
| _____ | ) | |
| | ) | |
| PIONEER SERVICES, LLC and | ) | |
| 7303 INCORPORATED | ) | |
| d/b/a START REHAB, INC. | ) | |
|         Third party plaintiffs, | ) | |
|     v. | ) | |
| | ) | |
| URB, INC., XEZ, INC., and | ) | |
| ANTHONY URBANOWSKI, | ) | |
|         Third party defendants. | ) | |

## THIRD PARTY CLAIM OF RELATED PARTIES

Now come third party plaintiffs, Pioneer Services LLC ("Pioneer") and 7303
Incorporated d/b/a Start Rehab, Inc. ("StartRehab") (collectively "third party plaintiffs") by and
through their attorneys, Offices of Catherine Simmons-Gill, LLC, and for their claim against
Urb, Inc., XEZ, Inc., and Anthony Urbanowski state as follows:

### PRELIMINARY STATEMENT

The original complaint in this matter alleges causes of action by a non-operating Illinois
corporation against two individuals and a non-existent corporation.  This third party complaint
pursuant to Fed. R. Civ. P. Rule 13 clarifies and brings into the litigation the legal entities
actually involved in the actions and activities which are the subject matter of the original
complaint and further alleges breach of contract, conversion, tortious interference with

1

contractual relations and fraud against various third party defendant legal entities and one individual, all controlled by Brian Urbanowski, the sole shareholder, officer and director of Urb, Inc., plaintiff in the original action.

## PARTIES

1.      Pioneer Services, LLC is an Illinois limited liability company with a place of business at 6325 North Avondale, Suite C-2, Chicago, Illinois 60631 ("Pioneer" or "third party plaintiff").

2.      7303 Incorporated is an Illinois corporation with a place of business at 6325 North Avondale, Suite C-2, Chicago, Illinois 60631 ("7303" or "third party plaintiff").

3.      Since some time in 2005, 7303, Inc. has at times used the d/b/a StartRehab, Inc. which d/b/a name is registered with the Illinois Secretary of State.

4.      Defendant Urb, Inc. is on information and belief an Illinois corporation with a business address at 7250 North Cicero Avenue, Suite 100, Lincolnwood, IL 60712 ("Urb").

5.      On information and belief, Brian Urbanowski is the president, secretary and registered agent for Urb and there are not and have never been any other officers or directors of Urb.

6.      On information and belief, SKM, Inc. was, from 1992 until it was dissolved in 2004, an Illinois corporation with its last listed business address at 7303 North Cicero Avenue, Suite B, Lincolnwood, IL 60712 ("SKM").

7.      On information and belief, Brian Urbanowski was during its entire existence the president, secretary and registered agent for SKM and there have never been any other officers or directors of SKM.

8.      XEZ, Inc. is, on information and belief, an Illinois corporation, with a place of business at 7250 North Cicero Ave, Suite 100, Lincolnwood, IL 60712 ("XEZ").

2

9.    On information and belief, Brian Urbanowski is the president, secretary and registered agent for XEZ and there are not and have never been any other officers or directors of XEZ.

10.    Brian Urbanowski is a citizen and resident of the State of Illinois and this federal judicial district.

11.    On information and belief, Anthony Urbanowski ("Anthony") is the brother of Brian Urbanowski and, has, since at least 1990 performed various services for Urb, SKM and XEZ as an employee or independent contractor or through an entity owned by Anthony.

12.    On information and belief, Anthony presently does business and/or performs services for XEZ and Urb at the following business address: 7250 North Cicero Avenue, Suite 100, Lincolnwood, IL 60712.

13.    Anthony Urbanowski is a citizen and resident of the State of Illinois and this federal judicial district (SKM, XEZ and Anthony sometimes collectively referred to as "third party defendants").

### JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over the third party claim under 28 U.S.C. § 1367 because the third party claims are part of the same case and controversy as is alleged in the Complaint.

15.    Supplemental jurisdiction is proper for the sake of judicial economy and convenience because the various claims, affirmative defenses and third party claims involve the same witnesses, the same parties or parties closely related to the parties to the complaint and the same factual and legal dispute.

16.    Venue is proper in this jurisdiction for the same reasons that it is admitted that it is proper

3

in StartRehab's Answer to the complaint: the acts in controversy took place within the jurisdiction.

## FACTS COMMON TO ALL THIRD PARTY CLAIMS

17.    Between 1992 and 1999, Chonus, Inc. and various other Illinois corporate and LLC entities, of which the principal shareholder or sole member respectively was Gregory Bingham ("Early Bingham Entities"), engaged in various real estate enterprises and business dealings with SKM and various other Illinois corporations of which the principal shareholder was Brian Urbanowski ("Early Urbanowski Entities").

18.    Among the activities pursued jointly by the Early Bingham Entities and the Early Urbanowski Entities between 1992 and 1999 was the purchase of real properties by one of the Early Urbanowski Entities, the rehab of those properties by the Early Bingham Entities, the marketing and sale of the rehabbed property, and a 50/50 split of the profits from the sale between the Early Urbanowski Entity and the Early Bingham Entity after expenses of both were reimbursed.

19.    Until 1999, all advertising by both parties was newspaper advertising.

20.    During the pursuit of the activities described in paragraphs 17-19 above, both the Early Bingham Entities and the Early Urbanowski Entities pursued other business activities that did not involve working together.

21.    For approximately two years between 1997-1999, Gregory Bingham and Brian Urbanowski discussed the possibility of joint marketing of real estate properties owned by various entities which each owned and/or controlled.

22.    In 1999, these discussions resulted in a joint venture between Pioneer and SKM that operated under the name LENDCO, Inc., a venture that engaged in the purchase, rehab and sale of real estate and which venture was abandoned within a few months.

23.     Some time in late 1999 or early 2000, Pioneer and SKM formed a second joint venture ("Joint Venture") for the purpose of joint marketing of real properties owned by: 1) Pioneer and other LLC's and corporations of whom the sole member or principal shareholder was Gregory Bingham ("Bingham Entities"); or, 2) SKM and other corporations of whom the principal shareholder was Brian Urbanowski ("Urbanowski Entities").

24.     Until sometime in 2002, the Joint Venture operated out of the then residence of Brian Urbanowski on Old Orchard in Skokie, Illinois.

25.     Between 2002 and December 2004, the Joint Venture operated out of 7303 North Cicero Avenue, Suite B, in Lincolnwood, Illinois.

26.     Between January 1, 2005 and August 2006, the Joint Venture operated out of 7250 North Cicero Avenue, Suite 100, Lincolnwood, Illinois.

27.     Between 1999 and August 2006, the Joint Venture marketed real properties owned by the both Bingham Entities and the Urbanowski Entities in the same advertising and marketing program through the following media: phone calls operated by a sales team composed of independent contractors (1999-2006), newspaper advertising in English(1999-2006) and Spanish(2001-2006) language newspapers, radio advertising on English (2001-2006) and Spanish (2001-2006) language stations, TV advertising on English and Spanish language channels (2002-2006), flyers/brochures (2001-2006), Internet website (late 2005 - August 2006) and distribution of a CD marketing piece (2001).

28.     Properties owned by the Bingham Entities and properties owned by the Urbanowski Entities were advertised simultaneously in the same advertising pieces under the jointly owned marketing name URB INC.  A copy of a typical advertising piece is attached as Exhibit A to the Third party Claim.

5

29.     No distinction was made in any advertising or marketing between properties owned by the Bingham Entities and those owned by the Urbanowski Entities, nor were the properties identified in advertising as being owned by any particular entity.

30.     Prospective customers and customers were unaware of any distinction between properties owned by the respective entities.

31.     All expenses of the Joint Venture were paid by 7303 Incorporated, an Illinois corporation, set up for the sole purpose of receiving accounts payable of the Joint Venture and paying its expenses.

32.     Expenses of the Joint Venture were rent on the space at 7303 North Cicero, Suite B, Lincolnwood, Illinois, and later, the space at 7250 North Cicero Ave, Suite 100, Lincolnwood, Illinois, marketing and advertising preparation and placement costs, salaries and payments to independent contractors who performed the sales and marketing function of the joint venture, and salaries of the receptionist and the bookkeepers for the Joint Venture.

33.     Fixed expenses of the Joint Venture such as rent and receptionist/bookkeeper salaries were split between SKM and later XEZ on the one hand ("SKM/XEZ"), and Pioneer on the other hand, on a 50/50 basis and paid by a monthly contribution of SKM/XEZ and Pioneer respectively to 7303.

34.     Variable expenses of the Joint Venture including advertising and marketing expenses, market research expenses, telephone expenses,  and sales and marketing fees and commissions were paid according to the following formula: 1) the number of properties sold by both Bingham and Urbanowski Entities in any given month was determined; 2) the percentage of the total sales by units attributable to the Pioneer Entities was determined; 3) the percentage of the total sales by units attributable to the Urbanowski Entities was determined; 4) Pioneer wrote a check to 7303 for its share of the monthly variable expenses as determined by its pro rata share of properties that the Pioneer Entities had sold in the month; 5) SKM/XEZ wrote a check to 7303

6

for its share of the monthly variable expenses as determined by its pro rata share of properties
that the Urbanowski Entities had sold in the month; 6) 7303 then wrote the checks to pay for all
of the fixed and variable expenses of the Joint Venture.

35. Starting some time in late 2005 and continuing through August 2006, Shirley Sellards,
Anthony Urbanowski and others operating for and/or on behalf of the Urbanowski Entities began
surreptitiously  a program of transferring assets of the Joint Venture to the name of various
Urbanowski Entities, including, among other assets, phone lines and subscription market
research tools.

36.    Starting some time in late 2005 and continuing through August 2006, Shirley Sellards,
Anthony Urbanowski and others operating for and/or on behalf of the Urbanowski entities began
surreptitiously a program of soliciting employees of and independent contractors of the Joint
Venture for new positions with Urbanowski Entities.

37.    Some time in 2005, Brian Urbanowski suggested to Gregory Bingham that the
advertising tool "URB INC" had been tarnished by various problems with sales of properties to
buyers who had failed to realize a profit or who were undercapitalized and lost properties that
they had purchased.

38.    Brian Urbanowski suggested that the Joint Venture develop a second marketing name,
START REHAB, which marketing name was duly introduced by the Joint Venture in 2005 and
used by the Joint Venture to advertise real properties owned by both Urbanowski Entities and the
Bingham Entities on a 50/50 basis exactly as URB INC had been used.

39.    In August 2006, the Bingham Entities and certain employees of and independent
contractors to the  Joint Venture arrived at the offices at 7250 North Cicero, Suite 100,
Lincolnwood, Illinois to find that in the middle of the night, Anthony Urbanowski and the
Urbanowski Entities had removed and converted to the exclusive use of the Urbanowski Entities
substantially all of the Joint Venture assets and certain Bingham Entities' assets from the

7

location and from the control of the Joint Venture and the Bingham Entities, including but not
limited to, all hard and electronic files, office equipment, phone line access and computer
equipment.

40.      In addition, certain sales employees of and independent contractors to the Joint Venture
had been solicited to work for the Urbanowski Entities with a promise of various increases in
salary and/or commissions.

41.      As of the date of the clandestine move of the Urbanowski Entities and all of the Joint
Venture phone lines and substantially all of the files, furniture and office equipment of the Joint
Venture, neither the Joint Venture or the Bingham Entities could conduct business.

42.      As a result of the removal described in paragraph 39 above, the Bingham Entities and
7303 were left with substantial unpaid invoices of the Joint Venture including phone bills, rent,
marketing and advertising expenses and personnel salaries and independent contractor payments.

43.      At no time, prior to August 2006 or after, did anyone representing the Urbanowski
individuals or Entities pay or offer to pay for the 50/50 or pro rata share of the Joint Venture
expenses attributable to the Urbanowski Entities.

44.      As a result of the acts alleged in the third party claim, third party plaintiffs have been
damaged in the following amounts: a) converted office equipment and computers, including 20
monitors, 20 hard drives, multiple peripherals, multiple software programs  - $34, 700; b) office
furniture including 10 desks, 20 chairs, 1 typewriters, 6 file cabinets, reception furniture -
$18,600; c) loss of profits business interruption for 90 days while new phone service was
established, office furniture purchased, office equipment purchased, replacement of sales
personnel, replacement of office personnel, recreation of files, and new advertising created and
placed - $1,000,000; d) employee related expenses for former Joint Venture employees,
including but not limited to severance packages, unemployment compensation payments, legal
fees, etc - $ 25, 000; e) payroll expenses for the activities necessary to replace the items

8

described in a) and b) above; 5) that portion of the expenses of the Joint Venture not covered in item d) attributable to the Urbanowski Entities paid in full by the Bingham Entities -$ 200,000; and, e) loss of that portion of the goodwill of the Joint Venture owned by the Bingham Entities occasioned by the loss of phone numbers, sales personnel, advertising and marketing tools including the marketing name URB INC, an asset of the Joint venture - $400, 000.

## COUNT 1
## BREACH OF CONTRACT

45.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-44 of the third party claim as if those allegations were fully set forth herein.

46.     The oral discussions of Brian Urbanowski on behalf of the Urbanowski Entities and of Gregory Bingham on behalf of the Bingham Entities in the period from 1996 -1999 created a contract for a Joint Venture between the two sets of entities.

47.     The substance of the contract was as follows: a) the Bingham Entities and the Urbanowski Entities would each buy and hold for sale real properties; b) the real properties owned by each at any given time would be and were advertised and marketed together, with the real properties of each group of Entities represented on a 50/50 basis in all advertising and marketing; c) the types of advertising would be expanded beyond English language newspaper advertising; d) Gregory Bingham would be responsible for all administration;  e) the fixed expenses of the Joint Venture, including but not limited to rent, would be split on a 50/50 basis; f) other expenses would be split on a pro rata basis as determined by sales of properties in a defined preceding period; and, g) Gregory Bingham would be responsible for the management and administration of the day to day activities of the Joint Venture.

48.     The day to day activities of the Joint Venture included the development and execution of marketing and advertising plans, the hiring and payment of Joint Venture personnel and independent contractors, and the financial activities of Joint Venture including payment of invoices and keeping of books and records.

49.     The terms of this contract were further delineated by the course of dealing among the parties between 1999 and August 2006, all of which course of dealing was in concert with the agreement described in Paragraph 48 immediately above.

50.     The Bingham Entities and Gregory Bingham fulfilled all of their commitments under the contract during its entire term.

51.     The third party defendants breached the terms of the contract when, without warning or discussion, they removed personal and intellectual property of the Joint Venture in August 2006 and would not permit the Bingham Entities access to Joint Venture real and intellectual property and failed to pay their portion of previously incurred Joint Venture expenses.

52.     The acts constituting numerous breaches of the oral contract and the contract between the parties created by course of dealing by third party defendants resulted in damage to the third party plaintiffs in excess of $600,000.

**COUNT II**
**CONVERSION**

53.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-52 of the third party claim as if those allegations were fully set forth herein.

54.     Third party defendants removed, used and continue to use for their own benefit, and to date have failed to return, furniture, equipment, hardware, software, phone lines, phone numbers, files and other intellectual and personal property belonging to the Joint Venture and the Bingham Entities from the facilities at 7250 North Cicero Avenue, Suite 100, Lincolnwood, Illinois.

55.     Since August 2006, neither the Joint Venture nor the Bingham Entities have had access to the property removed by third party defendants described more fully above.

10

56.     The acts of third party defendants described herein constitute conversion resulting in damage to third party plaintiffs in excess of $400,000.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

57.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-56 of the Third party claim as if those allegations were fully set forth herein.

58.     Over the period of time from late 2005 until August 2006, third party defendants secretly and knowingly set about a course of action designed to disable the ability of the Joint Venture and the Bingham Entities to continue to do business.

59.     Third party defendants' acts in August 2006 in removing and/or removing access of third party plaintiffs to the personal and intellectual property of the Joint Venture and of the Bingham Entities resulted in the inability of the Bingham Entities to continue to operate their businesses for a substantial period of time.

60.     The acts of third party defendants complained of in the third party claim were malicious and willful and done with the express intent of disabling the business of both the Joint Venture and the Bingham Entities.

61.     The acts of third party defendants described herein constitute tortious interference with contractual relations resulting in demonstrable damage to third party plaintiffs in excess of $1,000,000.

## COUNT IV
## FRAUD

62.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-61 of the third party claim as if those allegations were fully set forth herein.

11

63.    The acts and words of third party defendants described herein between October 2005 and August 2006 constituted a deliberate and intentional representation of the viability of the Joint Venture and the apparent willingness of third party defendants to engage in the Joint Venture.

64.    During the period of time from October 2005 to August 2006, representatives of third party defendants, usually Anthony Urbanowski and Shirley Sellards, met with representatives of third party plaintiffs usually Gregory Bingham and discussed and approved the allocation and payment of expenses for the joint venture for the foregoing month, quarter and/or year.

65.    At no time during those numerous regular meetings did third party defendants' representatives suggest or even hint that they were preparing actively to withdraw from the Joint Venture and to remove for their own benefit, Joint Venture and Bingham Entities' personal and intellectual property.

66.    In fact, third party defendants deliberately concealed their activities detrimental to the Joint Venture from their Joint Venture partner.

67.    Third party plaintiffs relied to their detriment on the deliberate acts and words of misrepresentation and deliberate and willful failure to act and to inform of third party defendants of the activities being undertaken on a daily basis by third party defendants to convert Joint Venture and Bingham Entities' assets to assets of third party defendants.

68.    The acts of third party defendants described herein constitute fraud resulting in damage to third party plaintiffs in excess of $600,000.

WHEREFORE, third party plaintiffs pray that:

A.    The complaint be dismissed with prejudice.

12

B.      That third party plaintiffs be awarded their actual damages according to proof for the acts of breach of contract, conversion, tortious interference with contractual relations and fraud of third party defendants; and

C.      That third party plaintiffs be granted such other and further relief as this Court seems just and equitable.

Respectfully Submitted,


April 3, 2008                                    By:     _____
                                                        One of the Attorneys for Defendant Start
                                                        Rehab and Third Party Plaintiffs



Catherine Simmons-Gill, Esq.
Offices of Catherine Simmons-Gill
221 North LaSalle Street
Suite 2036
Chicago, IL 60601
Tel: 312 609 6611
ARDC Number 2159058

13

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, Catherine Simmons-Gill, an attorney, certifies that a copy of **Third Party Claim of Related Parties** filed on April __, 2008 electronically with the Clerk of the Court for the Northern District of Illinois via the CM/ECF system which filing will result in notification of the filings to the attorneys for plaintiff as follows**:**

        **William E. Meyer, Jr.**
        Schiff Hardin LLP
        6600 Sears Tower
        Chicago, IL 60606
        (312)258-5500 (telephone)
        (312)258-5600  (fax)
        wmeyer@schiffhardin.com


        **Marla R. Shade**
        Schiff Hardin LLP
        6600 Sears Tower
        Chicago, IL 60606
        (312)258-5500 (telephone)
        (312)258-5600  (fax)
        mshade@schiffhardin.com


                                        _ s/Catherine Simmons-Gill
                                        Catherine Simmons-Gill

14

**EXHIBIT 1**



# URB. INC.

3/4/04

**WITH JUST $5,000 DOWN YOU CAN REHAB PROPERTIES LIKE THESE & MAKE THOUSANDS!**
**847-673-7097**

## Single Family

| | | |
|---|---|---|
| 11809 S. Sangamon | FR, 2,4 | $52,000 |
| 10938 S. Edbrooke | FR,2,5 | $53,000 |
| 1525 S. Kildare | FR,3,6 | $55,000 |
| 6617 S. Aberdeen | FR,4,6 | $59,000 |
| 21 E. 117th Pl. | FR,3,5 | $60,000 |
| 5600 S. Lafayette | FR,2,5 | $60,000 |
| 6931 S. Aberdeen | FR,5,10 | $64,000 |
| 10129 S. Wentworth | FR,3,7 | $68,000 |
| 5539 S. Hoyne | FR,6,10 | $69,000 |
| 4006 W. 16th St. | FR,3,5 | $69,000 |
| 7921 S. Escanaba | FR,3,6 | $70,000 |
| 6704 S. St. Lawrence | BR,3,6 | $75,000 |
| 2536 E. 97th Pl. | BR,2,* | $95,000 |
| 9523 S. Princeton | FR,2,5 | $58,000 |
| 6926 S. Eggleston | FR,3,8 | $62,000 |
| 12223 S. Normal | FR,3,8 | $75,000 |
| 426 N. Lawndale | BR,4,* | $85,000 |

*Information provided as Available.
**Part or all of building occupied.

## Multi Family

| | | |
|---|---|---|
| 8338 S. Buffalo | FR,2+2+2,12 | $82,000 |
| 9232 S. Dobson^ | FR,2+2+1,* | $100,000 |
| 6000 S. Aberdeen^ | BR,Multi | $125,000 |
| 4235 W. Fillmore^ | BR,3+3,12 | $185,000 |
| 125 N. Pine^ | BR,2+2+2+2 | $189,000 |
| 8746 S. Halsted | FR,3+2,10 | $60,000 |
| 6121 S. Peoria | FR,2+1,* | $67,000 |
| 10514 Ave. L | FR,2+2,12 | $88,000 |
| 6836 S. Prairie^ | BR,2+2,10 | $150,000 |
| 2836 W. Wilcox^ | BR,3+3,* | $184,000 |

^Larger down payment required

143,000

## BUY IT, FIX IT
### THEN
## SELL IT, RENT IT OR LIVE IN IT

Visit us at WWW.URBINC.COM

*7303 N. Cicero Ave., Suite B, Lincolnwood, IL  60712    (Phone) 847/673-7097   (Fax) 847/673-7095*