**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **URB, INC.** | ) | |
|         **Plaintiff,** | ) | |
|     **v.** | ) | **Civil Action No. 08 C 582** |
| | ) | |
| **STARTREHAB, INC., ROBERT** | ) | |
| **BINGHAM and GREGORY BINGHAM,** | ) | **Judge Joan B. Gottschall** |
| **Individually,** | ) | |
|         **Defendants.** | ) | **Magistrate Judge Geraldine Soat Brown** |
| _____ | ) | |
| | ) | |
| **PIONEER SERVICES, LLC and** | ) | |
| **7303 INCORPORATED** | ) | |
| **d/b/a START REHAB, INC.** | ) | |
|         **Third party plaintiffs,** | ) | |
|     **v.** | ) | |
| | ) | |
| **URB, INC., XEZ, INC., and** | ) | |
| **ANTHONY URBANOWSKI,** | ) | |
|         **Third party defendants.** | ) | |

**AMENDED THIRD PARTY CLAIM OF RELATED PARTIES**

       Now come third party plaintiffs, Pioneer Services LLC ("Pioneer") and 7303 Incorporated d/b/a Start Rehab, Inc. ("StartRehab") (collectively "third party plaintiffs") by and through their attorneys, Offices of Catherine Simmons-Gill, LLC, and for their claim against Urb, Inc., XEZ, Inc., and Anthony Urbanowski state as follows:

**PRELIMINARY STATEMENT**

       The original complaint in this matter alleges causes of action by a non-operating Illinois corporation against two individuals and a non-existent corporation. The original complaint further alleges the existence of a contract between plaintiff and at least one of the defendants. This amended third party complaint pursuant to Fed. R. Civ. P. Rule 13 clarifies and brings into the litigation the legal entities actually involved in the alleged contract.  The amended third party

1

claim further alleges breach of contract, conversion, tortious interference with contractual relations, breach of fiduciary duty and trademark infringement by the plaintiff, one third party defendant Illinois corporation that is controlled by the same individual that controls plaintiff and one individual.

## PARTIES

1.       Pioneer Services, LLC is an Illinois limited liability company with a place of business at 6325 North Avondale, Suite C-2, Chicago, Illinois 60631 ("Pioneer" or "third party plaintiff").

2.        7303 Incorporated is an Illinois corporation with a place of business at 6325 North Avondale, Suite C-2, Chicago, Illinois 60631 ("7303" or "third party plaintiff").

3.        Since some time in 2005, 7303, Inc. has at times used the d/b/a StartRehab, Inc. which d/b/a name is registered with the Illinois Secretary of State.

4.       Defendant Urb, Inc. is admitted to be an Illinois corporation with a business address at 7250 North Cicero Avenue, Suite 100, Lincolnwood, IL 60712 ("Urb").

5.       On information and belief, Brian Urbanowski is the president, secretary and registered agent for Urb and there are not and have never been any other officers or directors of Urb.

6.       On information and belief, SKM, Inc. was, from 1992 until it was dissolved in 2004, an Illinois corporation with its last listed business address at 7303 North Cicero Avenue, Suite B, Lincolnwood, IL 60712 ("SKM").

7.       On information and belief, Brian Urbanowski was during its entire existence the president, secretary and registered agent for SKM and there have never been any other officers or directors of SKM.

8.       XEZ, Inc. is, on information and belief, an Illinois corporation, with a place of business

2

at 7250 North Cicero Ave, Suite 100, Lincolnwood, IL 60712 ("XEZ").

9.      On information and belief, Brian Urbanowski is the president, secretary and registered agent for XEZ and there are not and have never been any other officers or directors of XEZ.

10.     Brian Urbanowski is a citizen and resident of the State of Illinois and this federal judicial district.

11.     On information and belief, Anthony Urbanowski ("Anthony") is the brother of Brian Urbanowski and, has, since at least 1990, performed various services for Urb, SKM and XEZ as an employee or independent contractor or through an entity owned by Anthony.

12.     On information and belief, Anthony presently does business and/or performs services for XEZ and Urb at the following business address: 7250 North Cicero Avenue, Suite 100, Lincolnwood, IL 60712.

13.     Anthony Urbanowski is a citizen and resident of the State of Illinois and this federal judicial district (SKM, XEZ and Anthony sometimes collectively referred to as "third party defendants").

### JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over the amended third party claim under 28 U.S.C. § 1367 because the amended third party claims are part of the same case and controversy as is alleged in the Complaint.

15.     Supplemental jurisdiction is proper for the sake of judicial economy and convenience because the various claims, affirmative defenses and amended third party claims involve the same witnesses, the same parties or parties closely related to the parties to the complaint and the same factual and legal dispute.

16.     Venue is proper in this jurisdiction for the same reasons that it is admitted that it is proper in StartRehab's Answer to the complaint: the acts in controversy took place within the jurisdiction.

## FACTS COMMON TO ALL AMENDED THIRD PARTY CLAIMS

**Background Joint Activities of Parties 1992-99**

17.     Between 1992 and 1999, Chonus, Inc. and various other Illinois corporate and LLC entities, of which the principal shareholder or sole member respectively was Gregory Bingham ("Early Bingham Entities"), engaged in various real estate enterprises and business dealings with SKM and various other Illinois corporations of which the principal shareholder was Brian Urbanowski ("Early Urbanowski Entities").

18.     Among the activities pursued jointly by the Early Bingham Entities and the Early Urbanowski Entities between 1992 and 1999 were the purchase of real properties by one of the Early Urbanowski Entities, the rehab of those properties by the Early Bingham Entities, the marketing and sale of the rehabbed property, and a 50/50 split of the profits from the sale between the Early Urbanowski Entity and the Early Bingham Entity after expenses of both were reimbursed.

19.     Until 1999, all advertising by all parties, acting individually and together, was newspaper advertising.

20.     During the pursuit of the activities described in paragraphs 17-20 above, both the Early Bingham Entities and the Early Urbanowski Entities pursued other business activities that did not involve working together.

**Formation of the First Contract**

21.     For approximately two years between 1997-1999, Gregory Bingham and Brian

Urbanowski discussed the possibility of forming a venture to engage in the joint marketing of real estate properties owned by various entities which each owned and/or controlled through various business entities set up by each individually.

22.     These discussions resulted in offers by both Gregory Bingham and Brian Urbanowski to the other respectively to form a joint venture through various legal entities owned by each.

23.     In 1999, Gregory Bingham on behalf of Pioneer and Brian Urbanowski on behalf of SKM accepted the offer of the other party and formed a company called LENDCO, Inc.

24.      The joint venture between Pioneer and SKM that operated under the name LENDCO, Inc., engaged in the purchase, rehab and sale of real estate.

25.     Both SKM and Pioneer contributed funds, services and real property to the LENDCO, Inc. joint venture as consideration for the contractual obligations of each joint venturer.

26.     SKM and Pioneer agreed to share profits and losses realized by LENDCO, Inc.

27.     The LENDCO, Inc. venture was abandoned within a few months.

**Formation of the Joint Venture Contract 1999-2006**

28.     Some time in late 1999 or early 2000, Pioneer and SKM offered each other and accepted the offer of the other to enter into another joint venture ("Joint Venture") for the purpose of joint marketing of real properties owned by: 1) Pioneer and other LLC's and corporations of whom the sole member or principal shareholder was Gregory Bingham ("Bingham Entities"); and, 2) SKM and other corporations of whom the principal shareholder was Brian Urbanowski ("Urbanowski Entities").

29.     Among the contractual terms for the Joint Venture agreed to orally by Gregory Bingham

and Brian Urbanowski on behalf of their respective legal entities were: sharing of office space, marketing under a single name, and the sharing of expenses of the venture under various formulas prior to the realization of profits from the sale of real estate.

30.    The contractual terms described in paragraph 29 above were further confirmed by the course of dealing of the parties between 1999 and 2006.

31.    As consideration for the Joint Venture arrangement, Pioneer and SKM each contributed various services, skills, knowledge and financial resources over a period of seven years.

**Location of the Joint Venture Operation 1999-2006**

32.    Until sometime in 2002, the Joint Venture operated out of the then residence of Brian Urbanowski on Old Orchard in Skokie, Illinois.

33.    Between 2002 and December 2004, the Joint Venture operated out of 7303 North Cicero Avenue, Suite B, in Lincolnwood, Illinois.

34.    Between January 1, 2005 and August 2006, the Joint Venture operated out of 7250 North Cicero Avenue, Suite 100, Lincolnwood, Illinois.

**Operation and Course of Dealing of the Joint Venture**

35.    Between 1999 and August 2006, the Joint Venture marketed real properties owned by the both Bingham Entities and the Urbanowski Entities in the same advertising and marketing program operated out of the same office through the following media: phone calls operated by a sales team composed of independent contractors (1999-2006), newspaper advertising in

English(1999-2006) and Spanish(2001-2006) language newspapers, radio advertising on English (2001-2006) and Spanish (2001-2006) language stations, TV advertising on English and Spanish language channels (2002-2006), flyers/brochures (2001-2006), Internet website (late 2005 - August 2006) and distribution of a CD marketing piece (2001).

36.    Properties owned by the Bingham Entities and properties owned by the Urbanowski Entities were advertised simultaneously in the same advertising pieces under the jointly owned marketing name URB INC.  A copy of a typical advertising piece is attached as Exhibit A to the Amended third party claim.

37.    No distinction was made in any advertising or marketing between properties owned by the Bingham Entities and those owned by the Urbanowski Entities, nor were the properties identified in advertising as being owned by any particular entity.

38.    Prospective customers and customers were unaware of any distinction between properties owned by the respective entities.

39.    All expenses of the Joint Venture were initially paid by 7303 Incorporated, an Illinois corporation, set up by Gregory Bingham for the sole purpose of receiving accounts payable of the Joint Venture and temporarily paying its expenses, until those expenses were reimbursed periodically by the Bingham Entities and the Urbanowski Entities.

40.     Expenses of the Joint Venture were rent on the space at 7303 North Cicero, Suite B, Lincolnwood, Illinois, and later, the space at 7250 North Cicero Ave, Suite 100, Lincolnwood, Illinois, marketing and advertising preparation and placement costs, salaries and payments to independent contractors who performed the sales and marketing function of the joint venture, and salaries of the receptionist and the bookkeepers for the Joint Venture.

41.    By oral agreement of Gregory Bingham on behalf of the Bingham Entities and Brian Urbanowski on behalf of the Urbanowski Entities and confirmed by long term course of dealing

between 2002 and 2006,   fixed expenses of the Joint Venture such as rent and receptionist/bookkeeper salaries were split between SKM and later XEZ on the one hand ("SKM/XEZ"), and Pioneer on the other hand, on a 50/50 basis and paid by a monthly contribution of SKM/XEZ and Pioneer respectively to 7303.

42.    By oral agreement of Gregory Bingham on behalf of the Bingham Entities and Brian Urbanowski on behalf of the Urbanowski Entities and confirmed by long term course of dealing between 1999 and 2006, variable expenses of the Joint Venture including advertising and marketing expenses, market research expenses, telephone expenses,  and sales and marketing fees and commissions were paid according to the following formula: 1) the number of properties sold by both Bingham and Urbanowski Entities in any given month was determined; 2) the percentage of the total sales by units attributable to the Pioneer Entities was determined; 3) the percentage of the total sales by units attributable to the Urbanowski Entities was determined; 4) Pioneer wrote a check to 7303 for its share of the monthly variable expenses as determined by its pro rata share of properties that the Pioneer Entities had sold in the month; 5) SKM/XEZ wrote a check to 7303 for its share of the monthly variable expenses as determined by its pro rata share of properties that the Urbanowski Entities had sold in the month; 6) 7303 then wrote the checks to pay for all of the fixed and variable expenses of the Joint Venture.

**Breakdown of the Joint Venture**

43.    Starting some time in late 2005 and continuing through August 2006, Shirley Sellards, Anthony Urbanowski and others operating for and/or on behalf of the Urbanowski Entities began a surreptitious  program of transferring assets of the Joint Venture to the name of various Urbanowski Entities, including, among other assets, phone lines and subscription market research tools.

44.    Starting some time in late 2005 and continuing through August 2006, Shirley Sellards, Anthony Urbanowski and others operating for and/or on behalf of the Urbanowski Entities began surreptitiously a program of soliciting employees of and independent contractors of the Joint

Venture for new positions with Urbanowski Entities.

45.     Some time in 2005, Brian Urbanowski suggested to Gregory Bingham that the advertising tool "URB INC" had been tarnished by various problems with sales of properties to buyers who had failed to realize a profit or who were undercapitalized and lost properties that they had purchased.

46.     Brian Urbanowski suggested that the Joint Venture develop a second marketing name, START REHAB, which marketing name was duly introduced by the Joint Venture in 2005 and used by the Joint Venture to advertise real properties owned by both Urbanowski Entities and the Bingham Entities on a 50/50 basis exactly as URB INC had been used.

47.     In August 2006, Anthony Urbanowski and the Urbanowski Entities removed from the offices at 7250 North Cicero, Suite 100, Lincolnwood, Illinois in the middle of the night,  and converted to the exclusive use of the Urbanowski Entities, substantially all of the Joint Venture assets and certain Bingham Entities' assets from the location and from the control of the Joint Venture and the Bingham Entities, including but not limited to, all hard and electronic files, office equipment, phone line access and computer equipment.

48.     In addition, between October 2005 and August 2006, certain sales employees of and independent contractors to the Joint Venture had been secretly solicited to work exclusively for the Urbanowski Entities with a promise of various increases in salary and/or commissions.

49.      As of the date of the clandestine move of the Urbanowski Entities in August 2006, all of the Joint Venture phone lines and substantially all of the files, furniture and office equipment of the Joint Venture, neither the Joint Venture or the Bingham Entities could conduct business.

50.     As a result of the removal described in paragraph 47 above, the Bingham Entities and

7303 were left with substantial unpaid invoices of the Joint Venture including phone bills, rent, marketing and advertising expenses and personnel salaries and independent contractor payments.

51.     In spite of repeated oral demands, at no time since August 2006, has anyone representing the Urbanowski individuals or Entities paid or offer to pay for the 50/50 or pro rata share of the Joint Venture expenses attributable to the Urbanowski Entities incurred prior to September 1, 2006.

52.     As a result of the acts of third party defendants,  third party plaintiffs have been damaged in the following amounts: a) loss of office equipment and computers, including 20 monitors, 20 hard drives, multiple peripherals, multiple software programs  - $34, 700; b) loss of office furniture including 10 desks, 20 chairs, 1 typewriters, 6 file cabinets, reception furniture - $18,600; c) loss of profits business interruption for 90 days while new phone service was established, office furniture purchased, office equipment purchased, replacement of sales personnel, replacement of office personnel, recreation of files, and creation and placement of advertising - $400,000; d) cost of employee related expenses for former Joint Venture employees, including but not limited to severance packages, unemployment compensation payments, legal fees, etc - $ 25, 000; e)  payroll expenses for the activities necessary to replace the items described in a -c above; f) the pro rata share of the expenses of the Joint Venture prior to September 1, 2006 attributable to the Urbanowski Entities -$ 200,000; and, g) loss of that portion of the goodwill of the Joint Venture owned by the Bingham Entities occasioned by the loss of phone numbers, sales personnel, advertising and marketing tools including the marketing name URB INC, an asset of the Joint Venture - $1,000, 000.

## COUNT 1
## BREACH OF CONTRACT

53.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-52 of the amended third party claim as if those allegations were fully set forth herein.

54.     The oral discussions of Brian Urbanowski on behalf of the Urbanowski Entities and of

Gregory Bingham on behalf of the Bingham Entities in the period from 1996 -1999 involved both offers and acceptances by Brian Urbanowski and Gregory Bingham on behalf of the Urbanowski Entities and the Bingham Entities respectively to form a joint venture relationship resulting in an oral contract to engage in the Joint Venture between the two sets of entities.

55.    The substance of some of the details of the contract was as follows: a) the Bingham Entities and the Urbanowski Entities would each buy and hold for sale real properties; b) the real properties owned by each at any given time would be and were advertised and marketed together, with the real properties of each group of Entities represented on a 50/50 basis in all advertising and marketing; c) the types of advertising would be expanded beyond English language newspaper advertising; d) Gregory Bingham would be responsible for all administration of, among other things,  marketing,  advertising and personnel for the joint venture;  e) the fixed expenses of the Joint Venture, including but not limited to rent, would be split on a 50/50 basis; f) other expenses would be split on a pro rata basis as determined by sales of properties in a defined preceding period; g) Gregory Bingham would be responsible for the management and administration of the day to day activities of the Joint Venture; and h) profits would be realized after expenses of the Joint Venture were paid.

56.    As consideration for entering into the Joint Venture arrangement, the Bingham Entities and the Urbanowski Entities each contributed services, skills, knowledge and capital to the operation of the Joint Venture.

57.    The terms of this contract were further confirmed by the course of dealing among the parties between 1999 and August 2006, all of which course of dealing was in concert with the agreement described in Paragraph 55 above.

58.    The Bingham Entities and Gregory Bingham fulfilled all of their commitments and all required conditions of the Joint Venture contract during its entire term.

59.    The third party defendants breached the terms of the Joint Venture contract by, among

other things: a) without warning or discussion, removing from the Joint Venture premises personal and intellectual property of the Joint Venture and the Bingham entities in August 2006, including furniture and equipment and hard and electronic files; b) secretly transferring ownership of the phone lines from the Joint Venture to the Urbanowski Entities; c) secretly transferring the contract with Who's Calling from the Joint Venture to the Urbanowski Entities; d) secretly soliciting the services of the Joint Venture sales employees and independent contractors for the sole benefit of the Urbanowski Entities; and, e) failing to pay a pro rata share of certain Joint Venture expenses.

60.     The acts constituting numerous breaches by third party defendants of the oral contract and the contract between the parties created by course of dealing resulted in damage to the third party plaintiffs in excess of $1,600,000.

## COUNT II
## CONVERSION

61.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-60 of the amended third party claim as if those allegations were fully set forth herein.

62.     During the time period from 1999 to 2006, third party plaintiffs purchased, owned and had an absolute and unconditional right to the immediate possession of various items of personal and intellectual property located at the facilities at 7250 North Cicero Avenue, Suite 100, Lincolnwood, Illinois, including but not limited to, furniture, equipment, hardware, software, phone lines, phone numbers, electronic and hard copy files and other intellectual and personal property ("Converted Property").

63.     On or about August 2006, the third party defendants wrongfully and without authorization assumed control, dominion and ownership of the Converted Property.

64.     Third party defendants removed, used and continue to use for their own benefit, and to date have failed to return, furniture, equipment, hardware, software, phone lines, phone numbers,

files and other intellectual and personal property belonging to the Joint Venture and the Bingham Entities from the facilities at 7250 North Cicero Avenue, Suite 100, Lincolnwood, Illinois.

65.    Gregory Bingham, on behalf of third party plaintiffs, on numerous occasions between August and December 2006, demanded the return of the Converted Property.

66.    Since August 2006, neither the Joint Venture nor the Bingham Entities have had access to the Converted Property removed by third party defendants described more fully above.

67.    The acts of third party defendants described herein constitute conversion resulting in damage to third party plaintiffs in excess of $53,300.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

68.    Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-67 of the amended third party claim as if those allegations were fully set forth herein.

69.    Prior to August 2006, Pioneer and Urb jointly had a contract with AT&T for the provision of phone service at 7303 North Cicero, Lincolnwood, Illinois under certain identified phone numbers ("AT&T Contract"). Exhibit A attached hereto is a phone bill from AT&T from December 2005 evidencing the existence of this contractual relationship.

70.    Prior to August 2006, Pioneer had a contract with Who's Calling for the tracking and analysis of all phone call traffic to the offices of the Joint Venture for the purpose of maximizing sales efforts of the joint venture ("Who's Calling Contract").

71.    During August 2006, third party plaintiffs had pending a number of contracts for the sale of individual parcels of real property ("Real Estate Contracts").

72.     Third party defendants were all aware of the AT&T Contract and all of its terms.

73.     Third party defendants were all aware of the Who's Calling Contract and all of its terms.

74.     While third party defendants may not have been aware of the specifics of the Real Estate Contracts, they were fully aware of that a number of Real Estate Contracts between third party plaintiffs and various potential purchasers of real estate were pending in August 2006.

75.     Third party defendants intentionally and deliberately induced AT&T and Who's Calling to breach their contracts with Pioneer/Urb and to enter into contracts with Urb alone for the same services, the same phone numbers and the same tracking/marketing services previously covered by the contracts with Pioneer.

76.     AT&T and Who's Calling did breach their contracts with Pioneer, and terminated phone service, access to certain phone numbers and marketing/tracking services to Pioneer during August 2006.

77.     As a result of the breach of contract by AT&T and Who's Calling induced by third party defendants, third party plaintiffs were unable to do business for several weeks resulting in loss of certain business opportunities, were permanently deprived of phone numbers that were associated with third party plaintiffs and their business, and were permanently deprived of the tracking/marketing expertise and historical tracking data of Who's Calling as it attached to the phone numbers used in their business for many years and as a result of the foregoing were damaged.

78.     As a result of the breach of contract by AT&T and Who's Calling induced by third party defendants, various individuals and entities breached their contracts with third party plaintiff.

79.     As a result of the breach of contract by AT&T and Who's Calling, various prospective purchasers of real properties were unable to reach third party plaintiffs.

14

80.     The acts of third party defendants in inducing AT&T, Who's Calling and actual and potential real estate purchasers to breach their contracts with third party plaintiffs were malicious and willful and done with the express intent of disabling and damaging the business of the Bingham Entities.

81.     The acts of third party defendants described herein constitute tortious interference with contractual relations resulting in demonstrable damage to third party plaintiffs in excess of $1,000,000.

## COUNT IV
## BREACH OF FIDUCIARY DUTY

82.     Third party plaintiffs repeat and reallege the allegations of Paragraphs 1-81 of the amended third party claim as if those allegations were fully set forth herein.

83.     Third party defendants, Urb and SKM owed a fiduciary duty to third party defendants as a result of their Joint Venture relationship.

84.     The acts and words of third party defendants, starting some time in late 2005 and continuing through August 2006 in surreptitiously instituting a program of transferring assets of the Joint Venture to the name of various Urbanowski Entities, including, among other assets, phone lines and subscription market research tools constituted a breach of the fiduciary duty of the Urbanowski Entities to the Joint Venture.

85.     The acts and words of third party defendants, starting some time in late 2005 and continuing through August 2006, in secretly engaging in a program of soliciting employees of and independent contractors of the Joint Venture for new positions with Urbanowski Entities constituted a breach of the fiduciary duty of the Urbanowski Entities to the Joint Venture.

86.     The acts of third party defendants in moving equipment and furniture and hard and

electronic files from the Joint Venture offices without notice and secretly in August 2006 constituted a breach of the fiduciary duty of the Urbanowski Entities to the Joint Venture.

87.    During the period of time from 1999 to August 2006, third party defendants (or their predecessors in interest) and their employees and representatives shared office space with third party plaintiffs and the Joint Venture and the parties has daily contact with each other,

88.    During the period of time from October 2005 to August 2006, representatives of third party defendants, usually Anthony Urbanowski and Shirley Sellards, met with representatives of third party plaintiffs, usually Gregory Bingham, and discussed and approved the allocation and payment of expenses for the joint venture for the foregoing month, quarter and/or year.

89.    At no time during those numerous regular meetings or otherwise did third party defendants' representatives suggest or even hint that they were preparing actively to withdraw from the Joint Venture and to remove for their own benefit, Joint Venture and Bingham Entities' personal and intellectual property.

90.    In fact, third party defendants deliberately concealed their activities detrimental to the Joint Venture from their Joint Venture partner.

91.    Third party plaintiffs relied to their detriment on the deliberate acts and words of misrepresentation and deliberate and willful failure to act and to inform of third party defendants of the activities being undertaken on a daily basis by third party defendants to convert Joint Venture and Bingham Entities' assets to assets of third party defendants.

92.    The acts of third party defendants described herein constitute a breach of fiduciary duty to third party plaintiffs, their Joint Venture partners, resulting in damage to third party plaintiffs in excess of $600,000.

WHEREFORE, third party plaintiffs pray that:

A.    The complaint be dismissed with prejudice.

B.    That third party plaintiffs be awarded their actual damages according to proof for the acts of breach of contract, conversion, tortious interference with contractual relations and breach of fiduciary duty; and

C.    That third party plaintiffs be granted such other and further relief as this Court seems just and equitable.

Respectfully Submitted,

June 19, 2008                    By:    _____

One of the Attorneys for Defendant Start Rehab and Third Party Plaintiffs

Catherine Simmons-Gill, Esq.
Offices of Catherine Simmons-Gill
221 North LaSalle Street
Suite 2036
Chicago, IL 60601
Tel: 312 609 6611
ARDC Number 2159058

17